Good afternoon, Your Honor. Good afternoon. I'm Lenny Levinson. I'm here on behalf of the defendant appellants in this matter. As the court is aware, we have appealed a decision from the district court denying qualified immunity to several police officers in the I think that the facts are probably well known to the court, but I would like to point out that it was undisputed that the decedent in this case fled from and ignored commands from two different officers, that the decedent jumped over the counter and entered an employee area in a convenience store when he was approached by the police officer, and that he struggled against the police officers while he was behind the counter. And the district court also found that during the struggle, he was flailing his legs, although during the struggle, you could not tell whether or not he had contacted any of the officers. Counsel, how do we have jurisdiction over this appeal, given that the district court found that there were material fact issues precluding summary judgment? Well, I believe that one of the material facts that the judge found is not supported by the summary judgment record. And that particular fact is the fact that she said that there was a genuine issue of fact as to whether and if and whether or not officers Martin and Costa had knowledge of Mr. Joseph's mental problems. And her reliance for that fact was a reference to the third amended complaint filed on behalf of the plaintiffs, and the third amended complaint is not verified, and we do not believe that that constitutes proper summary judgment evidence. So, counsel, if in fact that they did not know that he had mental issues, didn't the district court also find a number of other facts that were material? Yes, she did. And wouldn't those preclude our jurisdiction? Well, Judge, I guess the question at that point is going to be whether or not those facts are material, even if they are genuine. And I believe that based upon the case law, that the plaintiff has never identified the clearly established law that these police officers allegedly violated. And in fact, she ordered them during the pendency of the motion for summary judgment to specifically identify that clearly established right, filed a supplemental memorandum, and her reasons for judgment, she said that they still did not identify the right, and she undertook the analysis on her own. Right, she did. So, there is the analysis in the record before us today of what the cases are that would have to be reviewed. I guess that all depends on whether or not I'm correct that that is an issue of law for this court to review. Right, but there are cases in the record. There are cases in the record. So, that issue's gone, isn't it? Well, I don't believe so, Judge, because I think the cases that she relies on does not set forth a clear... Right, well, that issue's before us, is if you want to argue about the cases that the judge cited, or if you want to argue about the application of the gram factors without a particular case, as we allowed in the Newman case. Well, I think in this case, we can't apply just the gram factors, because the district court did not find that this was an obvious case, and my appreciation of the law is that you can only rely upon the gram factors if, in fact, it is an obvious case, and she did not specifically say it was not an obvious case, but she did say that the gram factors were not enough, and that this clearly established right had to be more clearly identified. Counsel, are you aware, has this court ever said that clearly established law is sufficient to put a law enforcement officer on notice of a violation of constitutional rights can come only from the Fifth Circuit? Have we ever said that? I don't believe so, no, sir. Have we ever said that it could come from... I've seen cases that talk about the sort of persuasive consensus of the Court of Appeals. Have we ever seen, have we ever identified what the, how many other circuit, sister circuits would be required for a persuasive consensus? I don't know the answer to that, Judge. I know there was some discussion in a case, I believe, recently up here, whether or not the case had to be one that was defined by the Supreme Court as opposed by a circuit court, but there are certainly innumerable cases in this circuit that relies upon prior decisions in this circuit. Counsel, can we talk about the, unless... Please, Judge. Can we talk about why your opinion that Hanks v. Rogers, Newman v. Guidry, and DeVille v. Marcantel are inapposite, if that's your position, sir? Well, Judge, I think Hanks is inapplicable because it is a completely set of, different set of circumstances that in this case, and in addition to that, I believe that in that case, it's absolutely positively clear that Mr. Hanks did not do anything in terms of resisting his being detained and arrested. I believe my recollection of the facts is that at all times, his hands were continually exposed to the police officer's view, that his hands never left the view, and in fact, at the time he was half-speared by the police officer, I believe he was against the car, his hands were behind his head, the police officer said, kneel down, he went to kneel down, took some kind of a lateral step to the left, and a police officer ran behind him and gave him a half-spear and dropped him to the ground. I don't mean to interrupt, Counsel, but before we get further down the road on Hanks, do you remember when Hanks was filed, when the opinion was published? I don't. So February — I'm sorry, April 5th, 2017, do you remember the date of the incident in this case? My notes say it was two months earlier, February of 2017. So Hanks was actually issued after the incident in this case. So I don't see how it can clearly establish anything, do you? That it would not, I guess. What about Newman v. Guidry, which was obviously during the relevant time period? In the Newman case, Judge, again, I don't believe that that gives us what we need in this case to clearly set forth and clearly establish right. Once again, we have someone who did not engage in any resistance whatsoever or disobey any commands whatsoever. Newman was a passenger in a car that got stopped on a traffic stop. They were going to arrest someone sitting in the back seat for an outstanding attachment. They were told to stay in the car. They got out of the car. Other officers came. They brought Mr. Newman to the back of the car. He agreed to a pat-down search. Then there is some dispute as to whether or not he made an off-color joke to the police officer or whether or not he actually grabbed the police officer's hand. And then in response to that, another police officer approached him with a baton, struck him 10 times in his arm and 3 times on his thigh. Within 9 seconds, Mr. Newman said he was given no commands. Because he did not fall to the ground, another police officer walked up behind him, tased him, tased him again when he fell to the ground and tased him while he was on the ground. Now this gentleman, Mr. Joseph, was already on the ground in the fetal position and he had verbally informed the officers that he had no weapon. Isn't that correct? He was in the fetal position lying on the ground even if there is a fact issue on whether he was flailing at some point while they were trying to carry him out of the area in question. Judge, I will say that the district court, looking at the video, interpreting it in accordance with the plaintiff's opinion, did determine at one point in time that he was allegedly in the fetal position with his hands over his face. However, in the same opinion, the same video said, and I quote, at other times he appears to be struggling against the officers but at no point can he be seen striking or attempting to strike an officer. Also the district court judge did not address at all 3 lay witnesses who witnessed this and said that Mr. Joseph was actively resisting, refused to obey the commands and continued to struggle until he was handcuffed and shackled. Now, I believe that the court is allowed to review the sufficiency of that and to determine whether or not that lay testimony Actually, Cole v. Carson says we are not allowed to review the sufficiency of the evidence and that we have no jurisdiction to review the sufficiency of the Summary Judgment Act evidence on qualified immunity. Maybe you need to say something else. And Judge, I understand that and I misspoke, but I do believe that under Flores v. Palacios, the court is entitled to give consideration to whether or not the trial court should have given consideration to the testimony of the lay witnesses. Let me ask you this. This is a complicated issue in light of the Supreme Court's statements in Scott v. Harris. You know, because we have the video, too, and we can watch it, and we're allowed if the video shows something, undisputedly, we are allowed to consider that, aren't we? I believe so, yes, ma'am. So what do we do? What say you if the video shows that he's lying in the fetal position and they're repeatedly kicking him? I would like you to say it doesn't show that, but, I mean, I believe that, in all candor to the court, I believe that to be able to do that, the court has to find that it absolutely, blatantly contradicts the allegation that he ... Or we could find there's a fact issue, couldn't we? Well, you could. Because the district court's already said, well, on the one hand, on the other hand, and if we find there's a fact issue, then we get back to our jurisdiction quandary. Well, I understand that, too. Can you help us? I'd love to. Judge, I just think that, you know, in light of the law at that time, you can't get past that there was not a clearly established right that can be identified. It's never been identified by the plaintiff. I don't think the district judge properly identified it based upon the cases she relied upon, and I've read the Mullinex case, I've read recent cases out of this court, and I think that there is a tremendous absence here of exactly what the right is. Now, on Friday, we were asked to look at the Williams case. I've looked at the Williams case. I think the Williams case favors our position. I think there are many similarities between this case and the Williams case that do not put us on notice as to what this clearly established right was, and I don't think that, based upon the facts as found by the trial court, that it is obvious and that it was beyond debate that what our police officers did was a violation of the constitutional rights under these circumstances. I look at Pratt. I read Pratt. I found Pratt to be closer to this case than the cases relied upon by the district judge. Now, I know Pratt goes a little bit further because there's more resistance, but up until the point that there's more resistance once he's on the ground, the same set of facts are very parallel. The judge says we are supposed to use measured and ascending force. Our argument is that we used measured and ascending force. We gave verbal commands. No good. Went over the counter. We went over the counter with him and engaged him, and at the point he's over the counter, we have an employee that's trapped behind the counter between him and a police officer, and the struggle ensues until we are able to subdue him. And I think that the police officers— What do you mean between him and the employees over here, the police officers and the guy and Mr. Joseph are here? Yes, but— So the co-employee is over on the side by herself, didn't she? Well, but unfortunately they're not that far apart. Okay, I thought you said she was in the middle of the fight. No, no, no, no, no. There's the wall. There's the employee. There's Officer LeDuff. There's Mr. Joseph struggling with Officer Martin, and then the rest goes on away from there. But she's on the counter and can't get out because there's no way to get out because of what's going on. And I think that, you know, there is— Police officers jumped over to be in the thing where they didn't like— none of them tried to just pull her out over the other side of the counter. Well, I think at first they couldn't move him because he was tensed up. He was sitting on— No, I'm talking about her. Oh, no, her? There are so many officers there, and she's just standing over there by herself, and not one of the officers just grabs her and pulls her over the counter on the other side. I'm not so sure that that could happen physically because of the way the counter is with cigarettes or whatever on top. I think she was pretty well there for the duration until it was concluded. If there's no other questions— Thank you, Counsel. Thank you very much. Thank you. May it please the Court, Counsel. My name is Jared Cossaglad. I'm here on behalf of the plaintiffs asking the Court to affirm the District Court's opinion denying summary judgment on the excessive force claim based on qualified immunity. Your Honor, there's several reasons why the District Court got it right in this case. The first is because once the facts are distilled in the light most favorable to the plaintiff, this is an obvious case when we look at the Graham factors. That's not the argument on page 26 to 30 of your brief. So the argument on page 26 to 30 of the brief is here's the clearly established law. They should have put everybody on fair notice that what happened here was excessive force under the Fourth Amendment. I don't see the words obvious case. Can you show them to me? I don't know that I use the word obvious case, but we do argue the Graham factors in detail. In order to affirm, would we have to say that the clearly established law that put these officers on fair notice, that they were all but the most flagrantly incompetent or willfully criminal, comes only from the Fifth Circuit? I don't know about willfully criminal. That's the standard, isn't it? It's effectively that they were willfully violating the law. Willfully violating the law, yes, Your Honor. And I don't know the answer to your question. Can you think of a Supreme Court case that would put them on fair notice? No, not a Supreme Court case. I don't think that the problem is there's not a lot of cases that have developed where you have a finding that an individual with a passive resistor who had engaged in no violence, committed no crime, and died as a result of an incident with the police. Can you give me one? I don't believe that there are factually analogous cases. In fact — I'm sorry. You just gave me the factual analogy, and I'm asking — you just listed a series of factors. So passive resistance, let's just take them. Passive resistance, at no point — I'm sorry, active resistance. Excuse me. Active resistance. Wasn't that — this is one of your factors, right? You're saying he was passively resistant. That's what the district court found, and I think we're bound to follow those. Okay. So let's just say passive resistance, the same level of force that's used in the same set of circumstances that we can see on Camera 9, looking down at it, because you agree with us that we look at Camera 9 under Scott v. Harris, right? We can look at that and determine what happened just as well as the district court can? Yes. Okay. So we look — right. So we look at Camera 9. We see what happened. We see the resistance. We see the level of force that was used, the same way the district court does. And then what would be the best case that you would have for that's clearly established, these officers should have known that they will be personally liable for money damages for the force that they used against them? So I think that there are several Fifth Circuit cases. I think the best one would be Newman v. Guedry, if I'm pronouncing that correctly. So let's talk about Newman. How is that good for you? Because the plaintiff had committed no crime. He was a passenger in a vehicle. He was not suspected of committing one. They searched one. There was a series of circumstances that led to him being beaten. And the officers engaged in overwhelming force. Well, hold on. Before we get to the force, though, he gets out of the car. He raises his hand. His palms are open. He's talking to Mario, his passenger in the car. Chill out. Chill out. Everything's cool. Hands out. And puts his hands on the roof of the car. Are you telling us that we're supposed to look at Camera 9 and determine that that's effectively what the gentleman did in this case? Yes. And the reason is because the district court found, and the video corroborates this, that Mr. Joseph surrendered into the fetal position as soon as he went over the counter. But I thought you just told me that under Scott v. Harris I can watch the video. I mean, the Supreme Court told us this. There were factual findings in that case about the car chase that were directly inconsistent with the video. And the Supreme Court said we look at the video. I think that what the Supreme Court said in Scott v. Harris is that it doesn't have to accept affidavits that directly contradict with video evidence. So here the district court ---- But there's also factual findings from the district court on summary judgment. This is to Judge Elrod's question earlier. There are factual findings in the favor of the nonmovement, just like in this case, and the Supreme Court said look at the video. Are you disagreeing with that interpretation of the court's opinion? To some extent. The district court in this case was armed with a lot of evidence, and so she was able to look at all of that evidence, all of the affidavits and depositions and documents in the record, and compare those to the video and make findings based on the totality of the evidence, what she sees in the video. So she was saying that I think to some extent we don't have to credit what the officer's claim happened behind the counter because the video shows some things that are different. And here in this case you have an individual she found surrendered in the fetal position. So on the video, is it your position that he's in the fetal position and he has said I don't have a weapon? What else has he said specifically? He says my name is Kendall Joseph. I don't have a weapon. Call the real police. They're trying to kill me. He calls for his mother. It's clear at that point that he's having some breakdown or something, isn't it? Clearly. Right in front of the officers at that point. Call the police. My name is so-and-so. I have no weapon. Drops to the floor in the fetal position. That's what happens on the video, right? Well, it happens on what's on the video, and it's part of what the officers admit happened. Was there a breakdown in Newman? No, there was not. And so he's lying there, and they're trying to get him out from under the cabinet, I guess. I don't know what they're trying to do. But they're kicking him and tasing him and all kinds of other things. Hitting him with a baton. And one of the first things she finds is that you have Officer Martin who immediately goes hands-on instead of engaging in talking to him, where he surrendered, and gets on top of him. And this is a 300-pound police officer, and there's multiple officers on top of him, and he has his hands pinned beneath him while the officers are on top of him, and Officer Martin discharges his taser into his back for 11 seconds. So, you know, it's difficult to explain that for the police officer as to why that would be reasonable under the circumstances. So is it your position, sir, that the video actually shows contrary, that there is not measured escalating force, that instead there's immediate jumping on the person and using a lot of force right away? Overwhelming force. So that's your position? Yes, Your Honor. Okay. And it's not just what the video shows. Obviously, it's corroborated by a lot of the other evidence. And one of the arguments we made to the district court and we made to this court is that there are periods of time on the video when the officers, there are so many officers in the vicinity, you can't see what's transpiring. And so we're left to accept that the officers limited their force to what you can see on video, which we do not believe to be the case. And I think a jury could infer that there was actually more force used than what they've admitted based on the circumstances here because of the injuries to Mr. Joseph and the fact that he died and the way that they treated him after they had him in handcuffs. Does that have anything to do with the case? Do we look at what happened in the police car at all? I think that what's germane about that is the bad faith of the officers in the way that they treated him. That he was face down, handcuffed. Folded into the car and then basically drowned face down in a pool of his own blood. So do we consider that as part of this case or is that not part of the case, that he's lying in his blood face down? Well, I think that the court lacks jurisdiction to share that part of the case because the district court ruled against us on that. We would obviously like to raise that and make that part of the case. But we can't consider any of that. Anything that happened after he's in the car or gets after he's behind the counter? I'm not sure how it would be relevant to the excessive force claim that the court found that we were allowed to pursue in this case in terms of what happened behind the counter up until the point he's in handcuffs and shackles because she specifically ruled against us on our excessive force claim about the way that he was restrained and put into the police car. And that part just sits until the end of the case, at which time you may or may not take it up. Is that right? Right. I mean, depending on the outcomes, we would have to make a decision based on how the court rules and what else happens. So one of the things is just like in the case that the court just ruled on, it was in Cole v. Carson, excuse me. Once you distill these facts, this case becomes a very obvious case. You have an individual who's not violent. He's not a threat. He hasn't done any violence. He's no immediate threat to anyone in the vicinity. They like to point out that there's a clerk who's somewhat down the counter and nearby, but he doesn't pose a threat. He doesn't threaten her with violence. He doesn't do anything to justify the amount of force that the officers use against him. Counsel, is the DeVille case helpful to you or not? I mean, to some extent. Look, the clearly established law prong of this analysis does not require factual identity between the cases that's decided and the case that is at issue, because otherwise we would never be able to prove a constitutional violation that violated clearly established law. So then what is the rule that you're asking us to adopt? The whole point of this is that we have to adopt rules that put police officers on clear, fair notice, bright lines so that they know do not do this thing. So, for example, you could imagine. I'm not saying it is the Fourth Amendment rule, but you could imagine a Fourth Amendment rule, no hog tying. I don't know what the state of the law is on hogs. Maybe that is or maybe it's not. But you could imagine that that would be a rule. Fourth Amendment doesn't permit it. So officers know that if they cross that line, they know that they have violated the Fourth Amendment and they're on the hook from personal liability for money damages. And the line that is in your brief is, well, you need to have an escalating degree of reasonable force. Is that a line that is just in your brief or do you get that from somewhere? That comes from this line of cases in the district court's analysis. I'm sorry, which line of cases? Sorry, there's two separate questions I'm getting asked here. One is you're asking about— Go ahead and answer Judge Oldham's question first. Sure. So about the no hog tying rule, I mean, that is not, I think, the rule exactly because of the qualified immunity decisions this court has rendered and it's not really an issue here. But the rule and what is at issue here is that officers have to use measured responses. So when an individual surrenders into the fetal position, they must measure their use of force to respond to that circumstance. This is not a case where you have a split-second decision where an individual has a weapon and he has seconds to decide what to do because someone's life is in danger. They had the opportunity to take a deep breath before they engaged Mr. Joseph and try to talk to him. I'm just asking, counsel, for the rule. What is the Fourth Amendment rule? They have to use measured responses, and they can only escalate their use of force in proportion and calibrated to escalating resistance, which didn't happen here. Did that rule exist already at the time of this case? Absolutely. Where is that rule articulated? The Hanks v. Rogers case. If Hanks v. Rogers is a few months after, where else is that rule articulated? It is articulated in Newman v. Goodrie. It's articulated in Keele v. Leyva. I would like to address the Hanks v. Rogers issue because even though the decision was rendered two months after, it made a finding about what the law and how it was clearly established years in the past. What case did it rely upon for the rule? I do not recall off the top of my head. I'm sorry. So our rule, what you would like the court to tell police officers in the Fifth Circuit is go out, act reasonably, and use an escalating degree of force in the way you apprehend people who are fleeing from you and jumping over counters in front of clerks in a store. Yes. Thank you. If officers encounter escalating resistance and escalating use of force, if there's efforts like the city of Cleveland case that the court cited on Friday to try to grab a police officer's weapon, grab their tasers, there's no problem, and I have no problem saying that that is a huge problem and the officers are confronted by a split-second decision they must react. And if they get it wrong, they shouldn't be liable for money damages. I mean, that is the quintessential qualified immunity case. That's not here. There's no evidence ever that he tried to grab the police officer's weapon, tried to strike the officers, and the district court made clear factual findings that taking in a light most favorable plaintiff, that is not what occurred in this case. So, you know, based on that set of facts, qualified immunity should not apply. And, you know, I do want to address one thing I think is important, because the district court doesn't say he doesn't resist at all. Clearly he does to some extent resist. I mean, she says for substantial portions of the video he's not resisting while they're applying all of this force, but there are moments, and that creates a fact question about whether or not his resistance was actually resistance to being handcuffed or just responses to the overwhelming force that they initiated. If you accept the fact that they knew he was an emotionally disturbed person and that they're trained that if they use violence against emotionally disturbed persons it can lead to more violence, then these officers ought to have been aware that they went immediately hands-on, that this could escalate the situation and even make it more dangerous for themselves and this individual. So the fact that he did resist, I mean, no human being in the world being tasered in the back for 11 seconds while you're being pinned underneath three police officers and you can't move your arms, isn't going to respond in some form or fashion. He didn't try to strike the officers, which I think is really important. People are going to move, and their legs are going to move, their arms are going to move. I was wondering, did you have a position, I think that Judge Oldham asked you, whether or not we can consider cases such as Cyrus and Phillips from the Seventh Circuit and Mattis from the Ninth Circuit, was your position that we can consider other circuits' laws in determining what is clearly established law about how you're supposed to do escalating force and not immediately take down somebody who's not surrendering their hands for handcuffing? If there's a consensus that police officers are supposed to act in certain ways, then yes. Just because there's never been a factually identical case in this circuit or in any others doesn't preclude denial of qualified immunity where it's obvious, and one of the ways that it becomes obvious is when you have... So how many circuits is persuasive? I would defer to your honors on that. It's your case. I don't think that you can put a number on it. I think that it depends on what you're talking about, what rules you're dealing with. It's going to be very hyper-specific because, you know, certain things are just obvious, like you shouldn't kill an arrestee just because he doesn't put his handcuffs behind his back. I mean, that seems fairly straightforward. No law enforcement in the world thinks you can do that and then avoid liability for damage. But there's a very big distinction that you're eliding in that answer, which is that the Supreme Court has said there are obvious cases on the one hand and then there are the fair notice cases on the other, right? So there are obvious cases under Graham. There's obvious cases under Garner. Then there's this other thing, which is that sometimes a series of court decisions will put you on fair notice. So we can't just say you're on fair notice when it's an obvious case. These are two separate categories of how you find clearly established law. Yeah, and I would actually argue there's a third category, which is when you can pull principles from these cases that officers violate that are lines that can't be crossed. Can I ask you about one of those principles? One of the principles in our line of cases is we distinguish between active resistance and passive resistance or passive resistance and non-passive resistance. Do we have any cases that you've read, because I haven't found any, where we would treat it as passive resistance or someone flees from the police officers? Not to—no, I don't think so. Okay. I think that if someone's in active flight, they are not a passive resister, but Mr. Joseph surrendered into the FIBA position. If we've had cases where somebody is not considered to be actively resisting, even if they're not acquiescing to a command after a flight, you're not disagreeing with our cases if we were to have those cases, are you? You're just not aware of them. Is that correct? Correct, Your Honor. Okay. Thank you. So I would just wrap up in conclusion. The defendant's entire argument on this appeal is premised on a different set of facts than what the district court found, which has complicated the analysis and the argument here because we haven't been able to evaluate how these things apply with the facts the district court found. And for that reason, we believe this appeal is without jurisdiction, and there should be a trial on whether or not the officers engaged in excessive force, and we would ask the court to affirm the district court's denial of qualified immunity in this case. If there's no other questions. Thank you. Thank you. Counsel, can you address right away why this isn't an obvious case under Graham and why Graham itself doesn't provide the clearly established law? Judge, I think the easiest way for me to address that would be to start with the whole discussion that's gone on before this panel when we're talking about what constitutes active or passive resistance, and it's really easy to look at certain facts that were found and ignore certain others that were found by the district court. The district court unequivocally found that Mr. Joseph was acting strangely in front of Gretna Middle School sufficient enough that the assistant vice principal saw him, was scared, and contacted the school resource officers, who then just went up to him to try to talk to him, and he ran before they could even talk to him, which gave rise to a radio call of a suspect fleeing. Officer Martin and Officer LaDuff, responding to that call, as found by the district court, got out of their police vehicle, gave Mr. Joseph a command to stop. He looked at them and then kept running and entered the store. So you have two instances found by the district court of flight by Mr. Joseph from uniformed police officers before anything happened inside of the store. Then when Officer Martin enters inside of the store, he gives commands for Mr. Joseph to get on the ground. Mr. Joseph then jumps behind the counter, and at that minute, Officer Martin does have a decision. Does he go behind the counter immediately, like he did, or does he allow Mr. Joseph to be behind the counter alone with the clerk while he stands on the other side of the counter? Officer Martin chose to physically engage Mr. Joseph after Mr. Joseph had ignored several verbal commands from multiple police officers before, and it was during that physical encounter where even the clerk said, as found by the district court, that Officer Martin was telling him, put your hands behind your back, and he wasn't, and he was flailing his legs and struggling against Officer Martin. It was 30 seconds after that encounter started when Officer Martin used that ascending force and tried to deploy his taser. The taser did not have its intended effect on Mr. Joseph. Is there a fact issue on any of this, counsel? These are all the facts that the district court herself found. That's the facts that we're relying upon to say why this is not an obvious case, why this case requires some better precedent to be cited by the plaintiff, which they have failed to do, to say what the clearly established law was. The law is existing precedent has to place the constitutional question beyond debate. Qualified immunity shields police officers unless they are knowingly incompetent or knowingly violate the law. And as was pointed out during the prior discussion, the cases, the primary cases relied upon by the district court when the district court performed its own analysis to try to say what the clearly established law was, Darden, she relied upon Darden, Hanks, and Newman. And DeVille. Well, secondarily, DeVille. The first one she relied upon was Darden. Darden was rendered well after the incidents in this case happened and has severe factual distinguishments where in Darden the plaintiff, this court found, was not resisting arrest, had followed most of the commands that was given to him. Again, in Hanks, as has been discussed, again, after this case. But Hanks doesn't say it's plowing any new ground. In fact, it relies a lot on DeVille and on Graham. So, you know, it's not saying we are now today establishing a new, we're saying they're finding that the law was already clearly established for some time. In Hanks, this court specifically said that, but the factual distinctions in the findings in Hanks were that in Hanks the plaintiff had largely complied with the commands that were given. In this case, the district court found before we even get in the store, he had already resisted verbal commands of two officers to stop and continue to flee. But at that point he's on the ground. No, when he ignored the commands. But when he gets on the ground, though, there's still a decision to be made at that point. And that was discussed. Again, Judge Ault, we talked about, you asked what the test was, and I'm going to come back to it. You discussed and you mentioned Scott v. Harrison. That's exactly correct. You can take the district court's interpretation of the video, or the Supreme Court has said you're free to apply your own interpretation of the video. But the fact remains, even the district court in how we can say it's not an obvious case found, at some points he's not struggling on the video, and at some points he is struggling on the video. So that can't be an obvious case under the law. So is your position that any time that he's struggling that it was appropriate to escalate? It's always appropriate if you're trying to overcome resistance, with force necessary to overcome resistance. But he wasn't getting anywhere. I mean he wasn't doing anything. His struggle was, if anything, just a panic. So it wasn't actually – Interestingly, the only actual description we have of what his resistance was came from the three disinterested witnesses that the district court hardly mentioned, where one of them, Valerie Mendez, said, it blew my mind it took this many police officers this long to gain control of this subject. Like that shook me. Her position was he was out of control at that point. Resisting, and we have to put the legal meaning on that. And then the store owner, Keith Hunter, said he destroyed the counter of the store through his resistance. That's exactly what he testified to. And we believe that the district judge not mentioning at all this court can consider that under applicable summary judgment law in addition to reviewing the video. Or else we have to find a fact issue and we have to punt. And the response that I would give to the fact issue is we're relying upon the facts as found by the district court. And the fact that she classifies struggling at one point and not struggling at another point proves it's not an obvious case to where these police officers know what we're doing violates clearly established law right now. To me, that proves it's not an obvious case to where Graham is not sufficient. And we can't look at the Eighth and the Seventh Circuits. I believe that that question is open, and obviously this court is free to rely on what they want to get to their rulings. If we looked at the Eighth and the Seventh Circuits, do you have a tough row to hoe? I don't think I found anything that was such on point to where we could say under these facts it was completely clearly established. I think that there were factual distinctions in the cases that I read. I can't say that I have read everything. But I think taking all of that in totality shows that this is not an obvious case. Graham's not enough. And the cases the district court relied upon are factually distinguishable. And two of them were rendered after the incident in this case took place, which should prove it wasn't clearly established. We're trying to rely on cases that are rendered after this incident to say it was. Well, it doesn't prove it one way or the other. It depends on what the case says. If it says we already said this somewhere else, and then you look at the somewhere else and see did it really say that. I agree. Okay, thank you. Thank you. We're going to take a